# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 04 CR 531-8 |
| ) | |
| v. ) | HONORABLE DAVID H. COAR |
| STANLEY LOMAX, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

On January 6, 2005, a superceding indictment charged Defendant Stanley Lomax ("Defendant" or "Lomax"), along with eight co-Defendants, of conspiring to commit robberies which affected interstate commerce, and with having committed thirteen robberies which affected interstate commerce, in violation of 18 U.S.C. § 1951. In addition, Lomax, and co-defendants Sidney Upchurch ("Upchurch") and Travis Hoffman ("Hoffman"), were charged with committing an armed robbery of the 159th Laramie Currency Exchange in Oak Forest, Illinois, on or about September 26, 2003.[1] Further, because a firearm was possessed, brandished and discharged during the Oak Forest robbery, Lomax, and co-Defendants Upchurch and Hoffman, were each also charged with a violation of 924(c)(1)(A) and (2). On April 29, 2005, after a jury trial, Lomax was found guilty of all three charges. Presently before the Court are Lomax's post-trial motions. Lomax has filed motions for:

---

[1] These violations are commonly referred to as Hobbs Act violations.

-1-

(1) judgment of acquittal; (2) an arrest of judgment; and (3) a new trial. For the reasons set forth below, Defendant's post-trial motions are DENIED.

# I. Defendant's Motion for Judgment of Acquittal

Lomax moves for judgment of acquittal, pursuant to Fed. R. Crim. P. 29 ("Rule 29"), for the Count One conspiracy charge. "A motion for acquittal should only be granted if there is insufficient evidence to sustain the conviction." United States v. O'Hara, 301 F.3d 563, 569 (7th Cir. 2002) (citing United States v. Jones, 222 F.3d 349, 351-52 (7th Cir. 2000); Fed. R. Crim. P. 29(a). When evaluating a motion for judgment of acquittal pursuant to Rule 29, the court must view the evidence, "in the light most favorable to the government," and determine whether that evidence "could support any rational trier of fact's finding of all the essential elements of the crime beyond a reasonable doubt." United States v. Brown, 328 F.3d 352, 355 (7th Cir. 2003) (citing United States v. Williams, 298 F.3d 688, 691-92 (7th Cir. 2002)).

Lomax contends that the Government failed to prove, beyond a reasonable doubt, either element of the conspiracy charge. First, the Defendant argues that the Government failed to prove that he knowingly became a member of a conspiracy with an intention to further the conspiracy. However, viewing all evidence in the light most favorable to the Government, there was considerable evidence, primarily from Upchurch, that Lomax willingly and knowingly became a member of the conspiracy to obstruct and delay commerce by robbery. Upchurch's testimony revealed that Lomax orally agreed to participate in the robbery, and he played an active role in the commission of the robbery of the 159th and Laramie Currency Exchange. Moreover, as the jury instructions provided, the defendant need not join at the beginning of a conspiracy or know

all the other members or the means by which the conspiracy's purpose was to be accomplished. See e.g., United States v. Monroe, 73 F.3d 129, 131-32 (7th Cir. 1995). While Lomax may have been implicated in less robberies than his co-Defendants, the evidence of his involvement in the conspiracy could support a rational trier of fact's finding of all of the essential elements of conspiracy beyond a reasonable doubt.

Second, Lomax argues that the Government failed to prove the conspiracy as charged, or if they did, what they proved was a constructive variance from the indictment. Relevant to this discussion is the Court's jury instruction on multiple conspiracies, which provided, in pertinent part:

> A defendant may argue that if the jury finds that he was guilty of conspiracy, that it was a different conspiracy than the one charged in the indictment. Proof of multiple or separate conspiracies is not proof of the existence of the conspiracy described in Count One, unless the conspiracy proved as to the particular defendant is the conspiracy that is described in Count One, or a conspiracy that was a subset of the charged conspiracy.
> * * * *
> If the government has not proved beyond a reasonable doubt that, as to a particular defendant, there existed the conspiracy charged in Count One or a conspiracy that was a subset of the charged conspiracy, then you must find that defendant not guilty as to Count One. And if the government has not proved beyond a reasonable doubt that a particular defendant was a member of the conspiracy as charged in Count One, or a conspiracy that was a subset of the charged conspiracy, then you must find that defendant not guilty as to Count One, even if that defendant might have been a member of some other conspiracy.[2]

Consequently, the instructions clearly set forth to the jury that Lomax must be found guilty of the conspiracy as set forth in the Count One, or a subset of the conspiracy set forth in Count One. Construing the evidence in the light most favorable to the Government, Lomax's involvement in the planning and ultimate execution of the Oak Forest Robbery, was either a part of the

---

[2] This instruction was adapted from an instruction given by Judge Matthew Kennelly in the case of United States v. Walker, Case No. 00 CR 744 (N.D. Ill. March 11, 2002).

conspiracy charged in Count One, or a subset of that charged conspiracy. As previously noted, even though Lomax's involvement may have been less than other co-Defendants, the evidence supported a rational trier of fact finding that Lomax was a part of the conspiracy as charged, or a subset thereof. Consequently, Lomax's motion for judgment of acquittal on the conspiracy charged is DENIED.

## II. Motion for an Arrest of Judgment

Lomax requests an arrest of judgment, pursuant to Fed. R. Crim P. 34 ("Rule 34"), as to all counts within the indictment. Lomax argues, as he did in a pretrial motion submitted to the Court on November 19, 2004, that the Government failed to present evidence demonstrating a sufficient nexus between the September 26, 2003 Oak Forest robbery and interstate commerce. While the Court denied Lomax's pretrial motion on April 15, 2005, Defendant renews his motion, and argues that at trial, the Government failed to show that the Oak Forest robbery affected interstate commerce in a manner that would give this Court jurisdiction over the Oak Forest robbery.

Pursuant to Fed. R. Crim. P. 34(a)(2), a court must arrest judgment if "the court does not have jurisdiction over the charged offense." Id.; see also United States v. Vlahos, 884 F.Supp. 261, 266 (N.D. Ill. 1995). As this Court noted in its April 15, 2005 ruling on Lomax's motion to dismiss for lack of subject matter jurisdiction, the Hobbs Act only requires that the Government "show a de minimis effect on interstate commerce to 'bring robbery within its prosecutorial reach.'" United States v. Sutton, 337 F.3d 792, 796 (7th Cir. 2003) (quoting United States v. Peterson, 236 F.3d 848, 851-52 (7th Cir. 2001)). Moreover, this Court noted that the Seventh

Circuit has held that "the class of transactions or the types of businesses affected must have a substantial effect on commerce–even if the specific events prosecuted do not, themselves, have a substantial effect on interstate commerce." Sutton, 337 F.3d at 796, n.2 (internal citations omitted). Further, the Seventh Circuit has noted that banks, and other financial institutions, "clearly meet that requirement." In its April 15, 2004 ruling, the Court found that currency exchanges, which perform many of the same functions as banks, engage in transactions that have a substantial connection to interstate commerce. At trial, pursuant to a stipulation, the Government presented evidence that on September 26, 2003, the 159th and Laramie Currency Exchange; (1) cashed checks issued by banks outside the state of Illinois; (2) wired transferred funds to and from other states; (3) processed insurance and utility bills that resulted in payments to entities outside the state of Illinois; and (4) purchased supplies that originated outside the state of Illinois for out-of-state businesses. All four categories of transactions clearly show that he 159th and Laramie currency exchange is the type of business that has a substantial effect on interstate commerce. Consequently, Defendant's motion for an arrest of judgment is DENIED.

### III. Motion For A New Trial

Lomax presents four grounds that he believes warrant the granting of a new trial, pursuant to Fed. R. Crim. P. 33 ("Rule 33"). Rule 33 provides, in relevant part, that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The Seventh Circuit has stated that, in order for a court to grant a Rule 33 motion for a new trial, "the evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." United States v. Reed, 875 F.2d 107, 113 (7th Cir. 1989)

(internal citations omitted). When, as in this case, a defendant requests a new trial based on insufficiency of evidence, the Court should grant the motion for a new trial, "only if the verdict is against the manifest weight of the evidence." United States v. Alanis, 265 F. 3d 576, 591 (7th Cir. 2001) (quoting Tullis v. Townley Engineering & Mfg. Co., 243 F.3d 1058, 1062 (7th Cir. 2001)).

Defendant believes that the Court: (1) denied Lomax a fair trial when it refused to allow the jury to determine if the gun was discharged; (2) erred in allowing testimony to be presented to the jury regarding Lomax's day reporting status; (3) committed error warranting a new trial when it refused Lomax's proposed instruction on multiple conspiracies; and (4) must grant a new trial as to Count 11 ("brandishing charge"), if it grants Defendant's Rule 29 Motion as to Count One ("conspiracy charge"). As an initial matter, because the Court denied Defendant's Rule 29 Motion as to Count One, it need not address Lomax's fourth argument in support of a new trial. Consequently, the Court will address the remaining three grounds in turn.

### A. *The Court's Refusal to Allow the Jury to Determine if the Gun was Discharged*

Lomax renews his arguments that he made during his trial, that whether he used, brandished or discharged the gun, and whether the using, brandishing and discharging were foreseeable under Pinkerton, went to a statutory element of the crime, and therefore had to be proven to the jury beyond a reasonable doubt. As this Court noted during Lomax's trial, pursuant to Harris v. United States, 536 U.S. 545 (2002), "[18 U.S.C. § 924(c)(1)(A)] regards brandishing and discharging as sentencing factors to be found by the judge, not offense elements to be found by the jury." Id. at 556. The Court made clear that this is the applicable standard, and the Defendants have not presented any arguments that invalidate the Harris standard. Consequently,

the Court's refusal to allow the jury to determine if the gun was discharged does not warrant a new trial.

## B. *Admission of Evidence of Lomax's Day Reporting Status*

Lomax argues that the Court erred when it allowed testimony of Lomax's day reporting into trial. Defendant states that day reporting is a pre-trial condition of bond to insure that defendants are looking for jobs. Lomax contends that the testimony of his day reporting was extremely prejudicial and prohibited bad acts evidence, and was not inextricably intertwined with the crime charged.

Defendants are correct when they note that pursuant to Fed. R. Evid. 404(b), evidence of prior or subsequent bar acts is inadmissible to sow conformity or propensity. United States v. Evans, 27 F.3d 1219, 1232 (7th Cir. 1994). However, such evidence may be used for proof, motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Id. There is a four-part test to determine the admissibility of 404(b) evidence. A court looks at whether: (1) the evidence is directed toward establishing a matter at issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. United States v. Kreise, 15 F.3d 635, 640 (7th Cir. 1994). Finally, prior bad acts "inextricably intertwined" and therefore not character evidence only:

> If they are necessary to complete the story of the crime on trial; their absence would create a chronological or conceptual void in the story of the crime; or they are so blended

or connected that they incidentally involve, explain the circumstances surrounding, or tend to prove any element of, the crime charged.

United States v. Hite, 364 F.3d 874, 881 (7th Cir. 2004) (internal citations and quotations omitted).

As the parties discussed in the April 15, 2004 pretrial conference, the evidence of Lomax's day reporting was proffered to show that while Lomax may have discussed committing robberies other than the September 26, 2003 robbery, Upchurch was hesitant to involve Lomax in other robberies because of his day reporting status. Consequently, the evidence of Lomax's day reporting was directed towards a matter other than Lomax's propensity to commit the crimes charge, and was similar and close enough in time to the robberies at issue. Moreover, there was no dispute that Lomax was on day reporting. Further, it was highly probative, because it helped to explain why Lomax was not involved in other robberies, yet still had a role in the larger conspiracy. The evidence helped to tell a complete story of Lomax's involvement in the conspiracy and the ultimate robbery. This highly probative value outweighed any danger of unfair prejudice. Consequently, the admission of evidence of Lomax's day reporting does not warrant the granting of a new trial.

### C. *The Court's Refusal to Proffer Lomax's Proposed Instruction on Multiple Conspiracies*

Lomax contends that the Court's instruction on multiple conspiracies allowed the jury to find that Lomax was guilty of a conspiracy as long as he agreed to commit the single robbery, even if he had no knowledge of the larger conspiracy, and did not intend to engage in any other criminal activity. Defendant correctly notes that a conspiracy is, "two or more persons joined

together for the purpose of committing a criminal act and that the charged person knew of and intended to join the agreement." United States v. Atkins, 274 F.3d 444, 450 (7th Cir. 2001) (internal citations omitted). Upchurch's testimony revealed that Lomax agreed with Hoffman and Upchurch to commit the September 26, 2003 robbery. This testimony is indicative of an agreement on the part of Lomax to commit the robbery charged. As this Court previously noted, it is the law of this Circuit that the defendant need not join at the beginning of a conspiracy or know all the other members or the means by which the conspiracy's purpose was to be accomplished. See e.g., United States v. Monroe, 73 F.3d 129, 131-32 (7th Cir. 1995). Consequently, the Court's jury instruction on multiple conspiracies was commensurate with Seventh Circuit precedent. Consequently, the Court's jury instruction on multiple conspiracies does not warrant a new trial.

## IV. Conclusion

For the foregoing reasons, Defendant's combined post-trial motions are DENIED in their entirety.

Enter:

_David H. Coar_
David H. Coar
United States District Judge

Dated: **June 30, 2005**